UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

DIAHANN L. GROSS                                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:09CV-99-S

SUN LIFE ASSURANCE COMPANY OF CANADA                              DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the following motions:

1.  Motion of the defendant, Sun Life Assurance Company of Canada, to dismiss the complaint (DN 5).

2.  Motion of the plaintiff, Diahann L. Gross, for remand of the action to state court (DN 6).

3.  Motion of the plaintiff, Diahann L. Gross, to hold the defendant's motion to dismiss in abeyance (DN 7).

The complaint in this matter was originally filed in the Jefferson County, Kentucky, Circuit Court.  The defendant, Sun Life Assurance Company of Canada ("Sun Life"), removed the action to this court, asserting both federal question and diversity jurisdiction.  After removing the action, Sun Life filed a motion to dismiss on the ground that the state law claims are preempted by the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  The plaintiff, Diahann L. Gross ("Gross"), filed a motion to hold the motion to dismiss in abeyance and to extend the deadline for responding.  She simultaneously filed a motion to remand the action to state court.  Gross contends that the disability policy is not an employee welfare benefit plan as defined by 29 U.S.C. § 1002 which states:

> The terms "employee welfare benefit plan" and "welfare benefit plan" mean any plan, fund or program which was heretofore or is hereinafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

The facts underlying the complaint relate to the denial of a claim for benefits by Gross under a disability insurance policy obtained through her former employer, Pinnacle Eye Care ("Pinnacle"). Gross alleges that she was wrongfully denied benefits under the policy, and alleges unfair claims settlement practices in the handling of her claim.  She also alleges that payment was not made in a timely fashion, as required by the Kentucky Insurance Code, that Sun Life acted in bad faith in its dealings with her, and that it violated the Kentucky Consumer Protection Act in the conduct of its business.

In seeking dismissal of the complaint on preemption grounds, Sun Life has first sought to establish that the disability policy is part of an employee welfare benefit plan sponsored by Pinnacle. Sun Life contends that the policy is part of a group plan which provides disability, life insurance, and accidental death coverage for Pinnacle employees, and that this group plan is covered by ERISA.  Sun Life contends that the "safe harbor" regulation, 29 C.F.R. § 2510.3-1(j), does not exempt this policy from the statute's reach, and that the claims of the complaint grounded in state law are preempted by ERISA's exclusive remedies.

Gross argues that the disability policy falls squarely within the "safe harbor" provision. Sun Life urges that the "safe harbor" provision does not apply, incorporating by reference its motion to dismiss and documents filed therewith.

The parties both cite *Thompson v. American Home Assurance Company*, 95 F.3d 429 (6th Cir. 1996) as controlling authority in this case.  The United States Court of Appeals for the Sixth Circuit established a three-step inquiry in determining whether an ERISA plan has been established:

> First, the court must apply the so-called "safe-harbor" regulations established by the Department of labor to determine whether the program was exempt from ERISA. [citations omitted].  Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedure for receiving benefits." [citations omitted].  Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson*, 95 F.3d at 435.  The court went on to state the requirements for application of the "safe harbor" provision as defined by the Department of Labor regulations, 29 CFR § 2510.3-1(j).  A policy will be exempted under ERISA only if all four of the "safe harbor" criteria are satisfied:

> 1.  The employer makes no contribution to the policy;
>
> 2.  Employee participation in the policy is completely voluntary;
>
> 3.  The employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and
>
> 4.  The employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435.

Gross asserts entitlement to coverage under the disability policy purchased through Pinnacle's benefits package.  She submitted the affidavit of Paul Wedge, owner-member of Pinnacle, in support of her contention that the disability policy comes within the ambit of the "safe harbor" regulation.  Wedge stated that Pinnacle agreed to allow Sun Life to solicit and sell the disability policy to Pinnacle employees.  Employees were free to accept or decline the offered coverage.  Employees who accepted coverage were responsible for all premiums which were collected by Pinnacle through payroll deduction.  He stated that Pinnacle has not created and did not intend to

create a permanent voluntary long term disability plan for its employees.  If less than 75% of Pinnacle employees purchased the disability policy, the coverage would no longer be offered by Sun Life.  Additionally, Wedge stated that the disability policy is not part of any employee benefit plan provided by Pinnacle to its employees.  Wedge Aff., ¶¶ 3-15.

Gross urges that all of the elements for safe harbor have been met with respect to the disability policy.  However, "[f]or purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled."  *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

Sun Life contends that the disability policy is part of an employee benefit plan offered to Pinnacle employees under one group insurance trust agreement.  This contention is not countermanded by any evidence offered by Gross.  Wedge's statement that the disability policy is not part of an ERISA plan is the sole support for Gross' contention.  Wedge Aff., ¶ 15.

The documents submitted by Sun Life support a finding that the disability policy was part of an employee benefit plan, as defined by ERISA.  It is "the reality of a plan" that is determinative of whether a plan exists under ERISA.  *Gaylor v. John Hancock Mutual Life Ins. Co.,* 112 F.3d 460, 465 (10th Cir. 1997) *quoting, Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1972); *see also, Postma, supra..*, 223 F.3d at 538.  The United Health Services Employer Trust - Group Benefit Summary indicates that Pinnacle is a participating employer who provides life, accidental death, and disability group insurance to Pinnacle employees.  Group Number 20178508 appears on the form listing these coverages.

The Employer's Participation Agreement executed by Wedge requested "participation under group insurance policies issued to the trustees of the United Health Services Employer's Trust."  The Participation Agreement also bears the group number.  There does not appear to be any dispute that the components of the Trust are insured by Sun Life.  As evidenced by the Group Benefit Summary, Pinnacle paid 100% of the premiums for its employees' life and accidental death coverage.

- 4 -

Employees who elected the optional disability coverage were responsible for paying the premiums in full.  Payroll deductions were made by Pinnacle for the premiums for employee-paid coverage which were submitted on their behalf.  Seventy-five percent group participation was required for continuation of the disability coverage.

As noted in *Donovan, supra.,* "...[T]he purchase of insurance does not conclusively establish a plan, fund, or program, but the purchase is evidence of the establishment of a plan, fund, or program; the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established." *Donovan*, 688 F.2d at 1373 (footnote omitted).  Wedge  stated that Pinnacle did not intent to create a permanent long term disability plan for its employees (Wedge Aff., ¶ 12).  However, the disability policy should not be viewed in isolation.  Pinnacle provided a number of policies which were paid for in full by the company.  Pinnacle simply made this coverage available to employees at their own expense. Because premiums for certain components of the plan were paid for by Pinnacle, the first element of the safe harbor provision is not met.  Thus we find that the plan was not exempt from ERISA under the "safe harbor" regulation.

Having found that the "safe harbor" provision does not exempt Pinnacle's program from ERISA, the court must next determine whether Pinnacle created an "ERISA plan" by assessing the remaining *Thompson* factors.

The court must determine whether Pinnacle created an ERISA plan by assessing from the surrounding circumstances whether a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits under the plan. *Donovan, supra.*  Under the circumstances presented, we find  the Trust was established and maintained by Pinnacle for purposes of providing life, accidental death, and disability insurance benefits to Pinnacle employees. As evidenced by the Group Benefit Summary, Pinnacle paid 100% of the premiums for its employees' life and accidental death coverage.  Employees who elected the

optional disability coverage were responsible for paying the premiums in full.  Payroll deductions were made by Pinnacle for the premiums for employee-paid coverage. 75% group participation was required for continuation of the disability coverage.  We conclude based upon the foregoing analysis that an ERISA plan was formed.  Further, it appears from the creation of the group policies trust and the automatic 100% payment of premiums for some coverages that Pinnacle intended to provide benefits to its employees.  *See, Thompson*, 95 F.3d at 435.

Gross  cited *Oliver v. Sun Life Assurance Company of Canada*, 417 F.Supp.2d 865 (W.D.Ky. 2006), a decision of this court, in urging that this disability policy is not part of an ERISA plan.  We find that the facts in *Oliver* render it distinguishable from the case before us.  The employee's affidavit in that case revealed that Oliver was told by his employer that the only disability benefit it provided was short-term disability which was administered solely by the employer.  The long-term coverage was completely separate and could be purchased by the employee at his own expense.  Oliver averred that once his short-term disability expired, he dealt solely and directly with Sun Life for his long-term disability.  *Id.* at 866.

Here, Pinnacle offered group life, accidental death, and optional disability insurance under one trust agreement for the benefit of its employees.  All components of the trust were insured by Sun Life.  Paul Wedge is identified on the Group Benefit Summary as the administrative contact for the trust.  There is nothing to distinguish any one of the coverages from another for purposes of segregating the disability coverage from the rest of the plan.

Based upon the foregoing analysis, we conclude that the disability policy was part of an ERISA plan and therefore removal was proper under our federal question jurisdiction.

While we need not determine the validity of the additional basis for removal, we note that Gross does not concede that the amount in controversy case is $75,000.00 or less.  Rather, she urges that Sun Life has failed to establish that the claims exceed the jurisdictional threshold.  Gross seeks past and future disability benefits, incidental and consequential damages, damages for

embarrassment, humiliation, mental anguish, pain and suffering, as well as pre- and post-judgment

interest, costs and attorney fees.  Though she seeks remand, she has not stipulated that her claims

have a value less than the jurisdictional threshold, information which is peculiarly within her control.


For the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT**

**IS HEREBY ORDERED AND ADJUDGED** that:

> 1.  The motion of the plaintiff, Diahann L. Gross, for remand of the action to state court (DN 6) is **DENIED.**
>
> 2.  The motion of the plaintiff, Diahann L. Gross, to hold the defendant's motion to dismiss in abeyance (DN 7) is **GRANTED TO THE EXTENT THAT IT SEEKS AN EXTENSION OF TIME IN WHICH TO FILE A RESPONSIVE BRIEF ON THE ISSUE OF PREEMEPTION OF THE PLAINTIFF'S STATE CLAIMS BY THE EXCLUSIVE REMEDY PROVISIONS OF ERISA.** In all other respects, the motion is **DENIED.**
>
> 3.  The motion of the defendant, Sun Life Assurance Company of Canada, to dismiss the complaint (DN 5) is **HELD IN ABEYANCE** pending the submission of a response by the plaintiff **within twenty-one (21) days from the date of entry of this order and a reply** by the defendant, if any, **within fourteen (14) days of the receipt of the plaintiff's response.**

**IT IS SO ORDERED.**

August 18, 2009

**Charles R. Simpson III, Judge**
**United States District Court**